Oldham, J. The Bank sued Hubbard and Hewett before a Justice of the Peace upon a note executed by them and one P. V. Rhea for seventy-two dollars, dated May 6th, 1842, due six months after date, negotiable and payable at the branch at Fayetteville. Upon the trial before the Justice, judgment was rendered for the defendants, and tlie Bank appealed to the Circuit Court. When the case came on to be tried in the Circuit Court the plaintiff’s attorney read in evidence to the jury the note sired upon and closed, and thereupon the defendant introduced three witnesses.. The first witness stated that from the time tire Bank went into operation until about January or February, 1843, he was a Director of the Branch at Fayetteville; that at no time during the time he was one of the directors, did the Bank, to his knowledge, ever loan any thing but its notes and the notes of the Real Estate Bank; that the Bank suspended specie payment on its notes sometime about the month of October, 1839. That about the date of the note sued upon, Arkansas Bank notes were at a discount from fifteen to thirty-five per cent. A second witness stated that he was Clerk of the Branch Bank at Fayetteville from sometime in 1840, until about the date of the note; that during that time, the Bank was in the habit of loaning its own notes, and he never knew it to deal in any thing else except Real Estate Bank paper, and that in the month of February, 1840, the Bank made a loan of thirty or forty thousand dollars, in the notes of the Real Estate Bank, which were at that time at discount from forty to fifty per cent. The testimony of the third witness was to the same effect. Thereupon the Bank by attorney asked the court to instruct the juiy as follows, 1st. “That for the discharge of notes executed to said plaintiff, Arkansas Bank paper is a good payment, although the same may be at a great discount. 2d. That a loan at par of Bank notes passing at from two to ten ppr cent, discount, unexplained by circumstances, would be usurious; but when the borrower was at liberty to return them to the lender at par value, and so exempt himself from loss, such a transaction would not be deemed usurious, unless that privilege was a mere cover to cloak a usurious design.” The court gave the first instruction and refused the second; and then proceeded to give the following additional instruction, “that if the jury were satisfied from the evidence that the note was executed upon a usurious contract, in such case they should find for the defendants; that if they were not satisfied that the contract was usurious, they should find for the plaintiff; that if they were satisfied, that the note was executed for depreciated Arkansas Bank paper which was at a depreciation of from twenty to sixty per cent, at the time the note was executed, and. that the note was given for the nominal value thereof, the note would be usurious and void.” To the instruction thus given by the court and to the refusal to give the second instruction asked, the Bank by attorney excepted, and set out the evidence by bill of exceptions. The correctness of the instructions, as. given and refused, is the question to be determined by this court. The same obj ection will apply to both instructions. Both the court and counsel seem to have taken it for granted, that there was proof before the jury showing the consideration upon which the note was executed. But from the bill of exceptions which purports to contain all the evidence, the consideration of the note does not seem to be proven, either by positive testimony, or by circumstances. The testimony does not show that the defendants or either of them ever, at any time, obtained a loan from the Bank; much less that they executed the note sued upon, in consideration of a loan of depreciated Bank paper. The testimony onlf' shows that the Bank loaned her own paper and that of the Real Estate Bank, and that the paper was at a great discount; but what constituted the consideration of the particular note in controversy was a question of Conjecture, to determine which there was not a particle of evidence. The instructions seem to have been based upon an imaginary state of facts, unsustained by proof, and were well calculated to bewilder the mind of the jury, mislead them from the issue and disqualify them from attaching that weight, and no more, to the evidence actually before them, which it was entitled to receive. The instructions were wholly unsupported by testimony, merely present abstract questions of law, and should not have been given. State Bank v. Williams, 1 Eng. R. 156. Robbins v. Fowler, 2 Ark. R. 133. The cóurt correctly refused the instruction asked by the Bank. From the evidence set out by the bill of exceptions, it is manifest that the instructions given by the court and excepted toby the Bank, must have had a most decided influence upon the minds of the jury in rendering the verdict which they did. In the absence of the instructions we cannot believe that the jury would have returned the verdict upon the vague, indefinite, and unsatisfactory testimony before them. For this reason we reverse the judgment, and award a venire tie novo. Reversed.